### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | No. 12-20006-01-KHV |
| OSCAR CALVIN, III, ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

### MEMORANDUM AND ORDER

On October 9, 2012, the Court held a hearing on pro se defendant's <u>Motion To Dismiss Indictment</u> (Doc. #59) filed September 11, 2012 and <u>Motion To Suppress</u> (Doc. #67) filed September 19, 2012.[1] The Court took the motions under advisement and granted defendant's request to file additional material in support of his motions. Defendant filed an additional <u>Motion To Suppress</u> (Doc. #77) on October 16, 2012 and a <u>Motion To Dismiss Indictment</u> (Doc. #81) on October 22, 2012. After thoroughly considering the evidence and the parties' arguments, the Court finds that defendant's motions to suppress should be sustained in part and that his motions to dismiss should be overruled.

### Facts

The Court makes the following factual findings based on the record of hearings on May 18 and May 23, 2012, before Judge John W. Lungstrum and on the hearing before the undersigned judge on October 9, 2012.

_____

[1]    Defendant has asserted his right to represent himself. Jacquelyn Rokusek served as standby counsel at the hearing on October 9, 2012.

On January 10, 2012, Officer Eckel of the Kansas City, Kansas Police Department was patrolling in the area of 12th Street and Quindaro Boulevard.  He stopped a 2001 Ford Taurus for violation of the municipal window tint ordinance.  Officer Eckel determined that the driver, Oscar Calvin, III, had a suspended driver's license and no insurance, and arrested him.

When Officer Eckel made the traffic stop, defendant illegally parked his vehicle more than 12 inches from the curb.  After he arrested defendant, Officer Eckel determined that the vehicle was a traffic hazard and ordered that it be towed.  Pursuant to department policy, Officer Eckel then conducted an inventory of the vehicle.  When he opened the glove compartment he discovered a .45 caliber EAA pistol, serial number EA117419.  The firearm was loaded with one round in the chamber and nine rounds in the magazine.  In 2004, defendant was convicted of attempted second degree murder in Wyandotte County, Kansas, Case Number 03CR1647.  As a convicted felon, defendant is prohibited from possessing a firearm.

On January 12, 2012, Detective Jason Sutton went to the Wyandotte County jail to speak with defendant.  Detective Sutton's testimony regarding that encounter differs sharply from defendant's testimony.

Detective Sutton testified as follows.  Detective Sutton read defendant his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and had defendant initial each line as he read them. Detective Sutton asked if defendant wanted to talk about what had happened, and defendant said he wanted to know what the officers had said.  Detective Sutton told defendant that Officer Eckel had recovered a gun from defendant's car.  Detective Sutton suggested that defendant carried the gun for protection, and defendant responded, "You're already right, I had it for protection."  Defendant then said that he did not want to make a taped statement, "which is telling me that he wants to

remain silent this is per <u>Miranda</u> rights a right of his and so we conclude the interview."[2] Just before

leaving the room, however, Detective Sutton asked defendant if he would give a DNA sample to be

compared with DNA on the firearm, and defendant responded, "I've handled that gun, my DNA will

be on it." At the hearing, the government attorney attempted to clarify Detective Sutton's testimony,

asking "And then when you asked him if he was going – if he would give you a DNA sample, that's

when he made the voluntary statement that his DNA would be on the gun?" Detective Sutton

replied, "Correct."

In contrast, defendant testified as follows. Detective Sutton asked if he knew his <u>Miranda</u>

rights. Defendant started to state his <u>Miranda</u> rights, but Detective Sutton stopped him, gave him

a piece of paper and said "initial." Detective Sutton did not read the <u>Miranda</u> rights set out on the

document which he told defendant to initial. Detective Sutton asked defendant why he had a gun

and defendant responded that he never had a gun. Detective Sutton then asked defendant if he

wanted to make a taped statement, and defendant responded "not without a lawyer present." On

cross-examination, defendant acknowledged that he had initialed each line of the <u>Miranda</u> warning,

but said that he did not read the document. The Court then said to defendant "I guess what you're

saying is, you knew your rights but you're complaining because he didn't read them to you."

Defendant responded that he knew some of his rights but stated that "I never read all the way

through my rights and [Detective Sutton] never read me my rights except for I had a right to remain

silent, anything I say can and will be used against me in a court of law. That's as far as I got. After

that, the rest I don't know." The Court asked defendant if there were other <u>Miranda</u> rights that have

---

[2]     Detective Sutton testified that defendant never asked for a lawyer.

any bearing on this, and defendant read the entire list of rights from the document.

To the extent that the testimony of Detective Sutton and defendant are inconsistent, the Court finds that Detective Sutton's testimony is more credible.

## Analysis

**I.      Motions To Suppress (Docs. #67 and #77)**

Defendant argues that the search of his vehicle violated his constitutional rights.[3] Defendant asserts that all evidence obtained as a result of that search – including the gun and his statements to Detective Sutton regarding the gun – must be suppressed as fruit of the poisonous tree.  See United States v. Wong Sun, 371 U.S. 471, 487-88 (1963).  He also argues that because Detective Sutton did not advise him of his Miranda rights and continued to question him after he had invoked his Miranda rights, the Court should suppress his statements to Detective Sutton that "you're already right, I did have [the gun] for protection," and "I've handled that gun, my DNA will be on it."

As to defendant's argument that the search of the vehicle violated his constitutional rights, the Court adopts the analysis set forth in the Memorandum And Order (Doc. #24) filed June 16, 2012, as follows.

> In his motion, defendant asserted that Kansas City, Kansas Police Department Towing Policy did not authorize Officer Eckel to impound his vehicle. Defendant contended that the inventory search therefore was not authorized, but was an exploratory search for evidence of criminal activity prohibited by the Fourth Amendment.  At the hearing, however, defendant conceded that his vehicle was illegally parked and that Officer Eckel was authorized to order the impoundment of the vehicle.  Further, defendant conceded that department towing policy required Officer Eckel to complete a full inventory search of the vehicle, including the glove compartment.  Defendant has not provided any basis to suppress the evidence that resulted from the inventory search of his vehicle.

---

[3]      Defendant does not challenge the basis of the traffic stop or the validity of his arrest for failure to produce a valid driver's license and proof of insurance.

> Defendant [has] asked the Court to consider South Dakota v. Opperman, 428 U.S.
> 364 (1976), in analyzing this case. In Opperman, the United States Supreme Court
> noted that impoundments by the police may be in furtherance of "public safety" or
> "community caretaking functions," such as removing "disabled or damaged
> vehicles," and "automobiles which violate parking ordinances, and which thereby
> jeopardize both the public safety and the efficient movement of vehicular traffic."
> Id. at 368. The Court in Opperman further noted that the "authority of police to seize
> and remove from the streets vehicles impeding traffic or threatening public safety
> and convenience is beyond challenge." Id. at 369. Nothing in Opperman suggests
> that the search of defendant's vehicle in this case violated defendant's Fourth
> Amendment rights.

Memorandum And Order (Doc. #24) at 3-4.

Defendant also argues that the Court must suppress his statements to Detective Sutton

because they were obtained in violation of the procedural protections set out in Miranda. Statements

made during custodial interrogation are inadmissible if officers fail to warn defendant of his Miranda

rights before the interrogation. 384 U.S. at 444. Custodial interrogation is defined as "questioning

initiated by law enforcement officers after a person has been taken into custody or otherwise

deprived of his freedom of action in any significant way." 384 U.S. at 444. Once warned, defendant

may waive Miranda rights, but the waiver must be voluntary, knowing and intelligent. See Moran

v. Burbine, 475 U.S. 412, 421 (1986) (relinquishment of Miranda rights must have been voluntary

in sense that it was product of free and deliberate choice rather than intimidation, coercion or

deception). A waiver is knowing and intelligent only if defendant made it with "a full awareness

of both the nature of the right being abandoned and the consequences of the decision to abandon it."

United States v. Minard, No. 05-6089, 2006 WL 3598396, at *2 (10th Cir. Dec. 12, 2006) (quoting

Moran, 475 U.S. at 421). A defendant need not, however, understand all the consequences of the

waiver. Id. (citing Colorado v. Spring, 479 U.S. 564, 574 (1987)). He need only understand that

he has the right to remain silent and that his statements may be used against him if he does not. Id.

The government bears the burden of proving that defendant voluntarily and knowingly waived his Miranda rights.  United States v. Nelson, 450 F.3d 1201, 1210-11 (10th Cir. 2006).

Under Miranda, an interrogation must immediately cease when an "individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent."  384 U.S. at 473-74.  Statements elicited by police after a defendant invokes this right are inadmissible.  See Michigan v. Mosley, 423 U.S. 96, 103-04 (1975).  To come within the ambit of this rule, however, a suspect's invocation of his right to remain silent must be "clear and unambiguous."  United States v. Rambo, 365 F.3d 906, 910 (10th Cir. 2004).  On the other hand, an express waiver of Miranda rights is not necessary.  North Carolina v. Butler, 441 U.S. 369, 373, 375 (1979).

In determining whether to suppress defendant's statements, the Court must determine by a preponderance of the evidence whether the statements were free and voluntary.  United States v. Hawthorne, 316 F.3d 1140, 1143 (10th Cir. 2003).  Courts must analyze the totality of the circumstance surrounding the incriminating statement, considering such factors as defendant's age, intelligence, education, familiarity with the justice system, and physical and mental  condition, including the use of drugs and alcohol.  United States v. Boskic, 545 F.3d 69, 80-81 (1st Cir. 2008); United States v. Burson, 531 F.3d 1254,1258-61 (10th Cir. 2008); United States v. Rith, 164 F.3d 1323, 1333 (10th Cir. 1999).

Here, the Court finds that Detective Sutton advised defendant of his Miranda rights both orally and in writing.  The Court also finds that defendant voluntarily waived his Miranda rights. After the Miranda warning, defendant initiated the communication, trying to find out what the officers were saying had happened. When Detective Sutton told him that officers found a gun in the glove compartment, he responded, "you're already right, I did have [the gun] for protection."

Defendant is an adult who appears to have at least average intelligence.  The record contains no evidence that defendant was under the influence of drugs or alcohol at the time of the interview.  The Court finds that defendant made the statement that "you're already right, I did have [the gun] for protection," freely and voluntarily after waiving his Miranda rights, and therefore the statement is admissible.

After defendant stated that he had the gun for protection, however, defendant told Detective Sutton that he did not want to make a taped statement.  Detective Sutton testified that defendant was "telling me that he wants to remain silent this is per Miranda rights a right of his and so we conclude the interview."  Just before leaving the room, however, Detective Sutton asked defendant if he would give a DNA sample to be compared with DNA on the firearm, and defendant responded, "I've handled that gun, my DNA will be on it."  Although in questioning Detective Sutton, the government attorney characterized defendant's statement that his DNA would be on the gun as "voluntary,"[4] the Court finds otherwise.  Once defendant said that he did not want to make a statement, Detective Sutton correctly concluded that defendant had invoked his Miranda rights, or in other words, withdrawn his waiver.  At that point, Detective Sutton should have stopped any questioning.  See Mosley, 423 U.S. at 103-04.  Instead, he asked defendant for a DNA sample.  The Court finds that defendant's statement in response – that "I've handled that gun, my DNA will be on it," should therefore be suppressed.

---

[4]     As noted, the government attempted to clarify Detective Sutton's testimony by asking "And then when you asked him if he was going – if he would give you a DNA sample, that's when he made the *voluntary* statement that his DNA would be on the gun?"  Detective Sutton replied,"Correct."

-7-

**II.      Motions To Dismiss For Preindictment Delay (Docs. #59 and #81).**

Defendant asserts that the Court must dismiss the indictment because the time for trial has

expired under the Speedy Trial Act, 18 U.S.C. § 3161.  The Speedy Trial Act generally requires a

trial to begin within 70 days of the filing of an indictment or defendant's initial appearance,

whichever is later.  18 U.S.C. § 3161(c)(1); United States v. Apperson, 441 F.3d 1162, 1178 (10th

Cir. 2006).  The Speedy Trial Act includes a number of exceptions which exclude specific periods

of delay from the 70-day limit.  See 18 U.S.C. § 3161(h).  Section 3161(h)(1)(D) allows for the

exclusion of time from the filing of a pretrial motion through the conclusion of the hearing on the

motion or other prompt disposition.  Section (h)(1)(H) provides for *automatic* exclusion of a delay

of up to 30 days after the hearing during which a motion is under advisement.  Section (h)(7)(A)

allows the Court to exclude from speedy trial calculations a delay resulting from a continuance

granted on the judge's own motion or at the request of defendant, his counsel or the government's

attorney if the judge makes a specific finding that the ends of justice served by granting an extension

of time or continuance outweigh the best interests of the public and defendant in a speedy trial, and

sets forth the reasons for that finding.

The government's response accurately sets forth the speedy trial time line, including

automatic exclusions for pending motions and for up to 30 days between a hearing on a motion and

a ruling on that motion.  See Doc. #70 at 1-3.  Based on those calculations, ten days remain on the

speedy trial clock, which is currently stopped due to pending motions.  Defendant notes that on

February 28, 2012, the Court granted defendant a 45-day extension of time to file pretrial motions.

He asserts that this extension "exceeded the thirty day period by 15 days, [and is] grounds for

dismissal, of charge."[5] Defendant's Response (Doc. #78) at 2.  Defendant appears to rely on the 30

day limit set out in Section (h)(1)(G), which only limits the amount of time which is automatically

excluded between the date the Court takes a motion under advisement and the date it issues a ruling

on the motion.  Section (h)(1)(G) does *not* limit the amount of time which a Court may exclude

under the ends-of-justice provision of 18 U.S.C. § 3161(h)(7), which requires the Court to make a

specific finding that the ends of justice served by granting an extension of time to file pretrial

motions outweigh the best interests of the public and  defendant in a speedy trial.  In granting

defendant the extension of time from February 28  to April 13, 2012, the Court made just such an

ends-of-justice finding  See Doc. #15.  The Court therefore finds that defendant has not established

a violation of 18 U.S.C. § 3161 or any other violation of his due process rights.

**IT IS THEREFORE ORDERED** that defendant's Motion To Dismiss Indictment

(Doc. #59) filed September 11, 2012, and Motion To Dismiss Indictment (Doc. #81) filed October

22, 2012, be and hereby are **OVERRULED**.

**IT IS FURTHER ORDERED** that defendant's Motion To Suppress (Doc. #67) filed

---

[5]        Defendant also argues that his attorney filed certain motions without his permission,
and therefore the filing of those motions should not stop the running of speedy trial time. The Court
pointed out to defendant at the hearing, that defendant was represented by counsel and there is no
authority for the proposition that the motions did not toll speedy trial time.

-10-

September 19, 2012 and <u>Motion To Suppress</u> (Doc. #77) filed October 16, 2012, be and hereby are

**SUSTAINED in part** in that the Court finds that defendant's statement to Detective Sutton that

"I've handled that gun, my DNA will be on it," is inadmissible.

      Dated this 1st day of November, 2012, in Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge
