## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | **No. 12-20006-01-KHV** |
| v. | ) | |
| | ) | **CIVIL ACTION** |
| OSCAR CALVIN, III, | ) | **No. 14-2349-KHV** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

On February 12, 2013, the Court sentenced defendant to 57 months in prison.  This matter is before the Court on defendant's <u>Motion To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody 28 U.S.C. § 2255</u> (Doc. #125) filed July 17, 2014.  For reasons stated below, the Court overrules defendant's motion.

### Factual Background

On January 10, 2012, Officer Eckel of the Kansas City, Kansas Police Department was patrolling in the area of 12th Street and Quindaro Boulevard.  He stopped a 2001 Ford Taurus for violation of the municipal window tint ordinance.  Officer Eckel determined that the driver, Oscar Calvin, III, had a suspended driver's license and no insurance and arrested him.

When Officer Eckel made the traffic stop, defendant illegally parked his vehicle more than 12 inches from the curb.  After he arrested defendant, Officer Eckel determined that the vehicle was a traffic hazard and ordered that it be towed.  Pursuant to department policy, Officer Eckel then conducted an inventory of the vehicle.  When he opened the glove compartment, he discovered a .45 caliber EAA pistol, serial number EA117419.  The firearm was loaded with one round in the chamber and nine rounds in the magazine.  In 2004, defendant was convicted of attempted second

degree murder in Wyandotte County, Kansas, Case Number 03CR1647.  As a convicted felon, defendant is prohibited from possessing a firearm.

On January 12, 2012, Detective Jason Sutton went to the Wyandotte County jail to speak with defendant.  Detective Sutton advised defendant of his <u>Miranda</u> rights both orally and in writing.  Defendant voluntarily waived his rights.  After the <u>Miranda</u> warning, Detective Sutton told defendant that officers had found a gun in the glove compartment, and defendant responded, "you're already right, I did have [the gun] for protection."  In ruling on defendant's motion to suppress, the Court found that defendant freely and voluntarily made this statement after waiving his <u>Miranda</u> rights.[1]

Tim H. Burdick, an Assistant Federal Public Defender, initially represented defendant.  Shortly after the Court ruled on defendant's motion to suppress, Mr. Burdick asked to withdraw because of a breakdown in communication based on defendant's insistence that counsel advance additional arguments related to the motion to suppress.  <u>See</u> <u>Motion To Withdraw As Counsel of Record</u> (Doc. #27) filed June 29, 2012.  The Court sustained counsel's motion and appointed John M. Duma to represent defendant.  Some five days before trial, Mr. Duma asked to withdraw because defendant refused to meet him and sent him a letter which stated that his attorney was "fired."  <u>Motion To Determine Status Of Counsel</u> (Doc. #46) filed August 23, 2012.  The Court allowed Mr. Duma to withdraw, appointed Jacquelyn E. Rokusek and continued trial.

On September 11, 2012, the Court granted defendant's motion to proceed pro se and appointed Ms. Rokusek as standby counsel.  Shortly after trial started on November 8, 2012,

---

[1]     Defendant later invoked his right to remain silent.  In ruling on defendant's motion to suppress, the Court suppressed evidence that in response to Detective Sutton's question about providing a DNA sample, defendant stated: "I've handled that gun, my DNA will be on it."

defendant asked to reinstate Ms. Rokusek as counsel and plead guilty.  Defendant pled guilty under a conditional agreement that allowed him to appeal the denial of his pretrial motions to suppress and dismiss charges for alleged violations of the Speedy Trial Act.  On February 1, 2013, defendant filed a pro se motion to withdraw his guilty plea.  The Court overruled defendant's pro se motion because he was represented by counsel and the motion lacked substantive merit.  On February 12, 2013, the Court sentenced defendant to 57 months in prison.

Defendant appealed his conviction.  On November 20, 2013, the Tenth Circuit affirmed.  See Order And Judgment (Doc. #122).  On May 27, 2014, the Supreme Court denied defendant's petition for a writ of certiorari.

On July 17, 2014, defendant filed a pro se motion to vacate his sentence under 28 U.S.C. § 2255.  Specifically, defendant argues that (1) his guilty plea was not voluntary or knowing (Section 12.A. in defendant's motion), (2) Detective Sutton did not advise him of his Miranda rights (12.B. and 12.E.), (3) officers unlawfully stopped and searched his vehicle (12.C. and 12.D.), (4) the jury was unconstitutionally selected (12.H.), (5) all three attorneys provided ineffective assistance because they did not properly investigate the case (12.I.), and (6) he did not receive a speedy trial (12.K.).[2]  See Motion To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody 28 U.S.C. § 2255 (Doc. #125) at 5-6.

### Analysis

The standard of review of Section 2255 petitions is quite stringent.  The Court presumes that the proceedings which led to defendant's conviction were correct.  See Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989).  To prevail, defendant must show a defect in the proceedings

---

[2]     Defendant's motion does not include Sections 12.F., 12.G. or 12.J.

which resulted in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974).

## I.      Voluntariness Of Guilty Plea

Defendant argues that his guilty plea was not voluntary or knowing. He specifically asserts that the Court took the plea in a "rush" in the middle of trial and did not explain to him the nature of the charge, his plea and the consequences of the plea. Motion To Vacate (Doc. #125) at 5. Shortly before sentencing, the Court overruled defendant's request to withdraw his plea. There, the Court noted as follows:

> The mere assertion of innocence is insufficient unless defendant presents some credible claim of legal innocence. See United States v. Byrum, 567 F.3d 1255, 1264 (10th Cir. 2009); United States v. Hamilton, 510 F.3d 1209, 1214 (10th Cir. 2007); see also United States v. Hickok, 907 F.2d 983, 985 n.2 (10th Cir. 1990) (assertion of subjective belief in defendant's own innocence does not mandate withdrawal of guilty plea). Defendant has not presented a credible claim of legal innocence and he does not explain how any allegation of innocence can be reconciled with his sworn admissions of guilt at the change of plea hearing. See United States v. Hamilton, 510 F.3d 1209, 1214 (10th Cir. 2007) (mere assertion of legal defense is insufficient; defendant must present credible claim of legal innocence). Defendant has obviously had a change of heart about the deal which he struck with the government. Defendant's change of heart, without more, is insufficient. See Byrum, 567 F.3d at 1265; Hickok, 907 F.2d at 986.  * * *
>
> No credible evidence suggests that defendant did not have close assistance of counsel before and during the change of plea hearing. Based on defendant's request, counsel was acting in a standby capacity until shortly before he pled guilty. Even so, defendant has not shown that counsel was not reasonably available to consult about the plea agreement and trial strategy. Defendant has been apparently unwilling to accept the advice and counsel of three respected attorneys – Tim Burdick, John Duma and Jacquelyn Rokusek. Nothing in the record suggests that defendant has not had competent counsel throughout the case. In fact, all three attorneys have consistently practiced before this Court in a competent and skilled manner. This factor favors the government. See Byrum, 567 F.3d at 1265 (upholding district court refusal to permit defendant to withdraw guilty plea in part because defendant was represented by "one of the top" effective and competent defense attorneys). * * *
>
> Here, the Court conducted a thorough inquiry at the plea hearing. At that time

defendant affirmed that he understood the charge against him, the maximum prison term of 10 years, the rights which he was waiving and the factual basis for his plea. Defendant acknowledged that his plea was free and voluntary, that no one had forced or threatened him to enter it and that the only reason he was making a plea was that he was in fact guilty as charged. In sum, the language of the plea petition and the Rule 11 colloquy establishes that defendant's plea was knowing and voluntary.

Memorandum And Order (Doc. #103) filed February 8, 2013 at 2-4. After balancing the relevant factors,[3] the Court concluded that defendant had not shown a "fair and just reason for requesting the withdrawal" of his plea. Fed. R. Crim. P. 11(d)(2)(B).

Defendant is procedurally barred from challenging the voluntariness of his plea because he did not appeal the Court's ruling on the issue. See United States v. Allen, 16 F.3d 377, 378 (10th Cir. 1994) (Section 2255 not available to test legality of matters which should have been raised on appeal). Defendant has not shown cause for his failure to raise the issue on direct appeal. In addition, for substantially the reasons stated in the Court's Memorandum And Order (Doc. #103), defendant's claim lacks substantive merit. Defendant has not alleged sufficient facts to show any error in the Court's prior ruling. The Court overrules defendant's first claim for relief.

## II.    Admissibility Of Statements To Detective Sutton

Defendant argues that Detective Sutton did not advise him of his Miranda rights. The Court

---

[3]        In analyzing whether defendant had shown a fair and just reason for withdrawal, the Court considered the following factors:

(1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

United States v. Sandoval, 390 F.3d 1294, 1298 (10th Cir. 2004) (citations omitted).

previously found that Detective Sutton advised defendant of his rights both orally and in writing, that defendant voluntarily waived his rights and that defendant freely and voluntarily told Detective Sutton that "you're already right, I did have [the gun] for protection." Memorandum And Order (Doc. #85) at 6-7. The Court held that defendant's statement was admissible at trial. See id. at 7. On appeal, the Tenth Circuit affirmed and noted as follows:

> According to Calvin, because he did not sign the *Miranda* waiver, but only initialed it, Sutton violated his right to remain silent by asking if Calvin wanted to talk. Moreover, Calvin says, Sutton's question created "circumstances pregnant with coercion." (Appellant's Br. at 14.) This argument is without merit. An ambiguous or equivocal statement, or no statement, regarding the *Miranda* right to a lawyer does not require the police to stop the interrogation. *Berghuis v. Thompkins*, 560 U.S. 370, 130 S. Ct. 2250, 2259-60 (2010) (citation and quotations omitted). Neither do the police need to "clarify whether the accused wants to invoke his or her *Miranda* rights." *Id.* The same standard applies when an accused has invoked the *Miranda* right to remain silent. *Id.* at 2260. Calvin's coercion allegation has no basis. He "does not claim that police threatened or injured him during the interrogation or that he was in any way fearful." *Id.* at 2263. His first statement was properly admitted at trial.

Order And Judgment (Doc. #122) at 7. Defendant has not alleged any new facts which would dictate a different result on collateral review. The Court overrules defendant's second claim for relief.

## III.   Validity Of Traffic Stop And Vehicle Search

Defendant argues that officers unlawfully stopped and searched his vehicle. See Motion To Vacate (Doc. #125) at 5. In his motion to suppress and on appeal, defendant did not challenge the basis of his traffic stop. Here, defendant claims that officers did not have reasonable suspicion of criminal activity to stop his vehicle, but he offers no specific facts to support his claim. Defendant has not shown cause for his failure to raise the issue on direct appeal. In addition, defendant stipulated that Officer Eckel stopped his car for violation of the municipal window tint ordinance,

which is a valid basis to stop a vehicle.  See United States v. Ramirez, 86 F. App'x 384, 385 (10th Cir. 2004) (officer observation of vehicle provided reasonable suspicion to believe windows had excessive tint in violation of state law).  The Court therefore overrules defendant's challenge to the traffic stop.

Defendant next argues that the search of his vehicle was unlawful.  In ruling on defendant's motion to suppress, the Court rejected defendant's argument.  On appeal, the Tenth Circuit affirmed and stated as follows:

> An inventory search under appropriate circumstances is valid and constitutionally permissible.  See [*United States v. Taylor*, 592 F.3d 1104, 1108 (10th Cir. 2010)] (an inventory search pursuant to a policy of searching towed cars to avoid liability for lost property is valid).  "The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge."  *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) (concluding it was reasonable to search an unlocked glove box during an inventory search).  This search was conducted according to standard police procedures.  *Id.* at 376.  Contrary to Calvin's contentions, these procedures do not violate the Fourth Amendment by allowing the officers to look into an unlocked glove compartment.  *Id.* at 376 n.10 ("[O]nce the policeman was lawfully inside the car to secure the personal property in plain view, it was not unreasonable to open the unlocked glove compartment, to which vandals would have had ready and unobstructed access once inside the car.").  The conduct of the police was not "unreasonable" under the Fourth Amendment.

Order And Judgment (Doc. #122) at 6.  Defendant has not alleged sufficient facts to justify reconsideration of this issue on collateral review.  The Court overrules defendant's challenge to the legality of the vehicle search.

## IV.  Objection To Composition Of Jury Pool

Defendant, who is African American, complains that he was indicted by an all-white grand jury and tried by an all-white petit jury.  See Motion To Vacate (Doc. #125-2) at 1.[4]  Defendant is

---

[4]     In his motion, defendant appears to challenge only the composition of the petit jury,
(continued...)

procedurally barred from raising this because he failed to raise it on direct appeal.  See Allen, 16 F.3d at 378 (Section 2255 not available to test legality of matters which should have been raised on appeal).  Defendant has not shown cause for his failure to raise the issue on direct appeal.  Even so, defendant's claim lacks substantive merit both as a direct challenge to the composition of the jury and as a challenge to counsel's failure to object on this ground.  See Coleman v. Thompson, 501 U.S. 722, 753–54 (1991) (claim of ineffective assistance sufficient to show cause for procedural default).

    The Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq., provides in pertinent part as follows: "It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes."  28 U.S.C. § 1861.  The Jury Act's fair cross section requirement parallels a defendant's Sixth Amendment right to trial by an impartial jury and both requirements are generally evaluated under the Sixth Amendment standard.[5] United States v. Shinault, 147 F.3d 1266, 1270 (10th Cir.), cert. denied, 525 U.S. 988 (1998); see Taylor v. Louisiana, 419 U.S. 522, 526-31 (1975).

    To establish a prima facie violation of the Sixth Amendment fair cross-section requirement,

_____

[4](...continued)
but he erroneously refers to the jury panel as the "grand jury."  Motion To Vacate (Doc. #125-2) at 1.  The Court construes defendant's motion as a challenge to the composition of both the grand and petit juries.

    [5]    Likewise, the Fifth and Sixth Amendments require that a grand jury be drawn from a representative cross section of the community.  See Campbell v. Louisiana, 523 U.S. 392, 397-99 (1998) (Fifth Amendment due process and equal protection rights to impartial grand jury); United States v. Deering, 179 F.3d 592, 597 (8th Cir. 1999) (Sixth Amendment right to grand jury from fair cross section); United States v. Terry, 60 F.3d 1541, 1544 (11th Cir. 1995) (Sixth Amendment right to grand and petit jury selected from fair cross section).

defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979). If defendant proves a prima facie violation, the government bears the burden of proving that attainment of a fair cross section is incompatible with a significant state interest. See id. at 368.

Defendant has no right to a "petit jury composed in whole or in part of persons of his own race." Batson v. Kentucky, 476 U.S. 79, 85 (1986) (citing Strauder v. West Virginia, 100 U.S. 303, 305 (1880)). Moreover, the Sixth Amendment does not require that "petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." Batson, 476 U.S. at 86 n.6 (citing Taylor, 419 U.S. at 538).

The system which the District of Kansas uses to select petit juries has been the subject of judicial scrutiny and has been found to satisfy the requirements of the Sixth Amendment and 28 U.S.C. § 1861 et seq. See United States v. Chanthadara, 230 F.3d 1237, 1256-57 (10th Cir. 2000); Shinault, 147 F.3d at 1270-73. Defendant has not shown that (1) the representation of African Americans on either jury was unfair or unreasonable in relation to the number of African Americans in the community or (2) African Americans were systematically excluded from either jury. Accordingly, the Court overrules defendant's claim that the composition of the grand and petit juries violated his Constitutional rights or that counsel provided ineffective assistance in failing to object on this ground. See Gustave v. United States, 627 F.2d 901, 906 (9th Cir. 1980) (reasonable and effective assistance of counsel does not require attorney to sift through voluminous jury records

every time client wants to challenge array as unconstitutionally drawn; must be some evidence of irregularity in jury selection practices before failure to object rises to level of ineffective assistance); see also Smith v. United States, 456 F.2d 121, 122 (3rd Cir. 1972) (grand and petit juries).

## V.      Assistance Of Counsel

Defendant argues that all three attorneys provided ineffective assistance because they did not properly investigate the case.  See Motion To Vacate (Doc. #125-2) at 1.  To establish ineffective assistance, defendant must show (1) performance of counsel that was deficient and (2) a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  To meet the first element, i.e. deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness." United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992).  The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988).

Defendant argues that all three attorneys provided ineffective assistance because they never asked him if the contraband in the vehicle belonged to him and they did not properly investigate the "cases" to help him.  At the plea hearing, defendant conceded that the government had evidence that he had committed the crime of being a felon in possession of a firearm.  Defendant has not cited any legal or factual defense to the charges or the evidence which the government outlined at the change of plea hearing.  A decision not to investigate cannot be deemed reasonable if it is uninformed, see Hooper v. Mullin, 314 F.3d 1162, 1170–71 (10th Cir. 2002), but defendant has not shown that

counsel's alleged decisions were uninformed.  Moreover, counsel may reasonably decide to rely on defendant's own prior statements to investigators.  See Wilson v. Simmons, 536 F.3d 1064, 1136 (10th Cir. 2008).

Defendant's claim is extremely vague, but to the extent he implies that counsel failed to interview or subpoena witnesses, he must provide affidavits of the potential witnesses as to the nature of the proposed testimony.  See United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (to show ineffective assistance, evidence about testimony of putative witness must generally be presented by witness testimony or affidavit); Sanders v. Trickey, 875 F.2d 205, 210-11 (8th Cir. 1989) (failure to provide affidavit from witness regarding potential testimony precludes finding of prejudice); United States v. Schaflander, 743 F.2d 714, 721 (9th Cir. 1984) (to warrant evidentiary hearing, movant must submit affidavit or sworn statement from witness or counsel); United States v. Anderson, No. 95-20086-JWL, 2003 WL 22757928, at *3 (D. Kan. Nov. 6, 2003) (Section 2255 movant required to submit affidavit of putative witness); United States v. Cosby, 983 F. Supp. 1022, 1026 (D. Kan. 1997) (prejudice not established where defendant did not submit affidavit of potential alibi witnesses); see also United States v. Jones, 124 F.3d 218, 1997 WL 580493, at *1 (10th Cir. Sept. 19, 1997) (certificate of appealability on ineffective assistance claim denied because defendant did not present specific facts to show that co-defendant would have offered exculpatory evidence). Defendant's conclusory allegations of inadequate investigation do not establish deficient performance and are insufficient to warrant an evidentiary hearing.  See United States v. Kilpatrick, 124 F.3d 218, 1997 WL 537866, at *3 (10th Cir. Sept. 2, 1997) (allegations of ineffective assistance must be specific and particularized; conclusory allegations do not warrant hearing); Hatch v. Oklahoma, 58 F.3d 1447, 1457, 1471 (10th Cir. 1995) (same).

To show prejudice in the guilty plea context, defendant must show a reasonable probability that but for the errors of counsel, he would not have pled guilty and would have insisted on going to trial.  See Hill v. Lockhart, 474 U.S. 52, 59 (1985); United States v. Clingman, 288 F.3d 1183, 1186 (10th Cir. 2002); Miller v. Champion, 262 F.3d 1066, 1068-69 (10th Cir. 2001).  As part of his proof, defendant must show that "a decision to reject the plea bargain would have been rational under the circumstances."  Padilla v. Kentucky, 559 U.S. 356, 372 (2010) (citing Roe v. Flores-Ortega, 528 U.S. 470, 480, 486 (2000)).  Although necessary, defendant's naked assertion that he would have insisted on trial but for counsel's errors is ultimately insufficient to entitle him to relief.  Miller, 262 F.3d at 1072; United States v. Gordon, 4 F.3d 1567, 1571 (10th Cir. 1993).  The Court evaluates the factual circumstances surrounding the plea to predict "whether the outcome of the district court proceedings would have been different if his counsel had not committed the alleged errors."  Clingman, 288 F.3d at 1186; see Miller, 262 F.3d at 1072 (court examines factual circumstances surrounding plea to determine whether petitioner would have proceeded to trial).  While defendant need not show that he would have prevailed at trial, his prospects of succeeding inform the Court's view whether he in fact would have gone to trial absent the alleged errors.  United States v. Triplett, 263 F. App'x 688, 690 (10th Cir. 2008); see Clingman, 288 F.3d at 1186.  The strength of the government's case is often the best evidence whether defendant in fact would have changed his plea and insisted on going to trial.  See Hill, 474 U.S. at 59-60.

In light of the testimony at the various hearings and the factual basis set forth at the change of plea hearing, defendant has not shown a reasonable probability that but for counsel's alleged conduct, the results of the plea proceeding would have been different, i.e. he would not have agreed to plead guilty.  See United States v. Young, 206 F. App'x 779, 785 (10th Cir. 2006); Rantz, 862 F.2d at 810-11.  The Court overrules defendant's fifth claim for relief.

**VI.    Speedy Trial**

Defendant claims that the Court must vacate his conviction because the trial did not commence within 70 days of the filing of the indictment.  See Motion To Vacate (Doc. #125) at 5. The Court overruled a similar argument in defendant's motions to dismiss for pre-indictment delay. See Memorandum And Order (Doc. #85) filed November 1, 2012 at 8; see also Motion To Dismiss Indictment (Doc. #59) filed September 11, 2012; Motion To Dismiss Indictment (Doc. #81) filed October 22, 2012.  The Speedy Trial Act generally requires a trial to begin within 70 days of the filing of an indictment or defendant's initial appearance, whichever is later.  18 U.S.C. § 3161(c)(1); United States v. Apperson, 441 F.3d 1162, 1178 (10th Cir. 2006).  The Speedy Trial Act includes a number of exceptions which exclude specific periods of delay from the 70-day limit.  See 18 U.S.C. § 3161(h).  After applying the relevant exclusions under Section 3161, the Court previously found that ten days remained on the speedy trial clock.  See Memorandum And Order (Doc. #85).  On appeal, the Tenth Circuit also concluded that defendant had not shown a violation of his rights under the Speedy Trial Act:

> The court patiently and repeatedly explained to Calvin that his attorney did not need his permission to file a motion to suppress evidence and that an "interest of justice" reason was not required to exclude the time.  On appeal, Calvin rearranges his argument to encompass different dates, but the essence is the same.  So is the result. The time devoted to his pretrial motions was automatically excluded from the time they were filed until the time they were promptly decided.  *See* 18 U.S.C. § 3161(h)(1)(H) (stating motions will be decided within 30 days after taking the motion under consideration).

Order And Judgment (Doc. #122) at 8.  Defendant has not alleged sufficient facts to establish a violation of his right to a speedy trial or any basis for seeking collateral relief on this ground.  The Court overrules defendant's sixth claim for relief.

## **Conclusion**

The files and records in this case conclusively show that defendant is not entitled to relief.

-13-

Moreover, defendant does not allege specific and particularized facts which, if true, would entitle him to relief. Accordingly, no response by the government or evidentiary hearing is required. See 28 U.S.C. § 2255; United States v. Cervini, 379 F.3d 987, 994 (10th Cir. 2004) (standard for evidentiary hearing higher than notice pleading); Kilpatrick, 1997 WL 537866, at *3 (conclusory allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where court may resolve factual matters raised by Section 2255 petition on record); United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by record).

### Certificate Of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).[6] To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v. Dretke, 542 U.S. 274, 282 (2004)). For reasons stated above, the Court finds that defendant has not satisfied this standard. The Court therefore denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

**IT IS THEREFORE ORDERED** that defendant's Motion To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody 28 U.S.C. § 2255 (Doc. #125) filed July 17, 2014 be and

---

[6]     The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

hereby is **OVERRULED**.  A certificate of appealability as to the ruling on defendant's Section 2255

motion is **DENIED**.

Dated this 5th day of May, 2015 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge